In The United States District Court For The
District of Kansas

Anthony Thompson, Plaintiffs            Case No 15-3017
Albert Banks,                            Case No 15-3093

v

Sprint/Nextel Wireless et al.,

## Objection to Report And Recommendation

The Court held a pre trial conference on September 1, 2022. Plaintiff appeared through counsel who had no intentions to argue the position presented to him by the plaintiff. Instead counsel appeared in court solely for the purpose of formally withdrawing from the case. The magistrate found that counsel made a vague reference of why 47 USC 605 should be applied. See Doc 236 at 6. The reason for the plaintiff's failure to cite the case is far from vague and was clearly explained to counsel over the phone as well through written correspondence. See Declaration and a summary of the issue which plaintiff mailed to counsel. Finally counsel made a number of consessions which are and always have been in conflict with the plaintiff's position. The untimely request for amendment was based on the plaintiff's misunderstanding of a numerous amount of persausive case law and the legislative history of congress' intent of the reach of 605 and its application to Title III. Because counsel did not present this issue to the magistrate for its consideration this court should find the untimely disclosure excusable. And ~~because of counsel's vague presentation~~ looking to the fact that the conduct ~~from both statutes has been pleaded~~ alleged in the complaint covers both Title III and 605 the prejudicial issue is not based on new discovery or new positions taken by the plaintiff's. The only prejudice to the defendants is the possible lia' for damages. The Court should review the prejudicial effect of counsel' waivers combined with the vague assertions at the pre trial conferer as sufficient cause to over rule the Report and Recommendation.

## Legal Standard

The exact words used to describe the standard for amending the pre trial order probably are less important than the meaning given them in practice... The words to prevent manifest injustice .... Adequately describe the restraint the trial judge should exercise. See 1983 Advisory Comm. Note to Fed. R. Civ. P. 16(e). The moving party for such modification bears the burden of proving that manifest injustice will result absent the amendment. The Tenth Circuit when reviewing a decision to deny a request to amend a Final Pretrial Order ... considers (i) the extent of prejudice or surprise to the non moving if the amendment were permitted: (ii) the ability of that party to cure any prejudice; (iii) disruption of the litigation by inclusion of the new issue; (iv) bad faith by the party seeking to modify the order. See Davey v Lockheed Martin Corp., 301 F.3d 1204, 1208-10 (10th Cir 2002); Koch v Koch Indus., 203 F.3d 1202, 1222 & n. 10 (10th Cir 2000). In practice, courts within the Tenth Circuit tend to find the Koch factors favor amendments that are (a) filed before trial has begun or is imminent (b) do not seek to change the movants theory of its case after discovery has closed, and (c) do not seek to avoid prior rulings or otherwise show bad faith by the movant.

(1) Counsel Failed To Explain The Pro'se Plaintiff's Reasons For Not Comprehending A Complex Technical Legal Analysis Therefore The Untimely Nature of The Proposal Should be Excused

As an initial matter the Court should take into account the fact that the evidence related to this issue shows that counsel entered the pre trial conference expecting to withdraw from the case and was not prepared to argue why the amendment should be allowed. On a number occassions the plaintiff has explained to counsel in great detail why he unintentionally read 47 USC 605 to actually be amended into Title III at the time Title III was enacted in 1968. See Att. 1 (Email sent by copy and scan sent directly to Mr Shultz explaining in great detail why he understood 605 to be amended into Title III) See Also Att 2 (Deposition taken in presence of Mr Shultz plaintiff explaining in detail his misunderstanding of 605's reach to Title III) See Also Plaintiff's Declaration (explaining conversations in which he explained to counsel he reasons for thinking by pleading a violation of 18 USC 2511 the 605 was violated as a result) In the face of this evidence counsel

presented the magistrate with a vague reference on why 47 USC 605 applied. See Doc 179 at 6. Counsel's vague reference is understandable at the pretrial conference because he came into the hearing prepared to do nothing more than withdraw. The failure of the Court to take into account the plaintiff's pro-se status at the time he amended his original complaint combined with the complexity of 605's correlation to title III warrant this Court to require the defendants to defend its position on the merits of its conduct in this case. Now the plaintiff will explain his reason for his untimely disclosure.

(2) The Plaintiff's Reason For The Untimely Disclosure Qualifies As Excusable Neglect And Does Not Disrupt The Trial

There is no denying that when enacting Title III congress simultaneously added 605(a)'s introductory clause. See United States v Rose, 669 F.2d 23, 26-27 (1st Cir 1981). The plaintiff also understood Appellate courts to have held "the wiretap act qualifies the entire paragraph of 605(a)... finding it significant that congress added 605(a)'s introductory clause when it passed Title III of 1968". Id. Courts have found the better interpretation limits each section of 605's prohibitions to activities not authorized by the wiretap act. See Edwards v State Farm, 833 F.2d 535, 540 (5th Cir 1987). The Court also held since congress added the introductory phrase to 605 at the same time it enacted the wiretap act congress intended to make the same statutes consistent. Id. In there motion for summary judgment the defendants argued they were immune from liability under 18 USC 2511(2)(a)(ii) See Doc ?. The defense by the defendants during summary judgment enhanced plaintiff's belief that his position was correct. Every Circuit to address 18 USC 2511(2)(a)'s relation to 605 has held 2511(2)(a) must sensibly be read as an exception of telephone companies from the prohibitions of 47 USC 605(a) and in a sense an authorization. See United States v Freeman 524 F.2d 337 (7th Cir 1975); United States v Clegg, 509 F.2d 605 (5th Cir 1975)(same). In otherwords the plaintiff understood these persuasive cases to hold phone companies were given a defense to 605(a) liability thru 2511(2)(a). Essentially when the Court rejected the summary judgment motion it opened the way for us to recieve damages under 605(a). The plaintiff has not ever been given any explanation on what effect did congress actions have on Title III when it amended 605(a) as a qualifying paragraph when it enacted Title III. The plaintiff now understands that whateve

4

effect the qualifying paragraph from 605 had on Title III it did not amend 605(a) into Title III.

(3) **When Courts Have Reviewed 605(a) Introductory Phrase Through Legislative History The Case Law on The Subject Further Clouded The Plaintiff's Understanding.**

There is no confusing the fact that the Wiretap Act of 1968 amended 605. Specifically the Wiretap Act removed all references to wire transmission in 605 except for the first clause to which it added the beginning phrase except as authorized by Chapter 119 of Title 18. Legislative history of the Wiretap Act explains with respect to wire communications the amended 605 was specifically designed to regulate conduct of communication personnel. See United States v Norris, 88 F.3d 462, 465 (7th Cir 1996)(citing S. Rep 90-1097 Reprinted in 1968 USCCAN 2112, 2196-97)). Congress explained that the new Wiretap Act was not intended to be an reenactment of 605. The Wiretap Act did however remove from 605 the principle share of its authority over wire communications. But it must be noted that the amended Wiretap Act did eliminate all of 605's authority. See TKR v Cable, 267 F.3d 196, 201 (3rd Cir 2001). But the Wiretap Act amendment created a gap in the regulatory scheme because the definition of wire communication for purposes of the Wiretap Act is narrower than the definition in 605. The Wiretap Act governs wire communications as they relate to common carriers. See Norris 88 F.3d at 465-66. 18 USC 2511(2)(a) was designed to protect phone carriers from liability of 605(a). But now the Court has found 2511(2)(a) did not protect the defendants for summary judgment purposes. The Plaintiff was pro se and his understanding although inaccurate led the plaintiff to believe 2511 had to be pled in order to recieve damages from both 18 USC 2520 and 47 USC 605(a). Counsel failed to explain this to the magistrate. The pro se plaintiff's misunderstanding of this complex correlation of statutes should be excused. The plaintiff thought when the Wiretap Act of 1968 simultaneously amended 605 it brought the two statutes into one. The plaintiff ask the court to excuse his negligent misunderstanding of the two laws.

There Is No Prejudicial Effect On The Defendants In Allowing The 605 Amendment Because The Theory Of The Allegations Are Identical To The Theory Charged In The Complaint. Plus The Trial Is Not Until June of 2023.

(A) There Is No Prejudice To Defendants Because The Theory In The Case Is Identical

When congress amended 605 with the cable communications Act Sen. Packwood explained that congress was adopting the legislative history with modifications emphasizing the broad reach of 605. See TKR Cable 267 F.3d at 206. There is no prejudice in allowing the amendment because the theory of both issues are identical as far as the defendants conduct. The court has found that summary judgment was not warranted because a factual dispute exist on whether the defendants were authorized to disclose text or Cell Site location information. 47 USC 605 simply finds liable phone companies who divulge or publish text without being authorized under the wiretap Act. Simply put if the defendant was not authorized to disclose electronic communications under the wiretap Act then likewise the defendants were not allowed to divulge and publish those communications to others. Because this conduct is identical there is little to no prejudice to the defendant's.

(B) Because Trial Is Not Going To be Interrupted The Tenth Circuit Favors Allowing The Amendment.

The timing of the motion in relation to the commencement of trial is an important element in analyzing whether the amendment would cause prejudice or surprise. See Palace Expl & Petroleum Dev Co, 316 F.3d 1110, 1117 (10th Cir 2003). The trial in this case is set for June of 2023 and this fact favors allowing the amendment. In practice, courts within the Tenth Circuit tend to find the Koch favors Amendments that are (a) filed before trial is imminent or has begun (b) do not seek to change the theory of the case after discovery has closed (c) do not seek to avoid prior rulings or show bad faith by the movant.

If this Court applies the Koch factors to the current case then the 605 amendment must be granted. As for the first factor the trial is neither imminent nor has it begun. Actually the trial is scheduled

9 months away. The second factor also weighs in the favor of the plaintiff. The conduct alleged in the complaint charges disclosing text messages without a lawful authorization under 18 USC 2511. The conduct which is unlawful under 47 USC 605 is the unlawful divulging or publishing communications without judicial authorization. The theory for both statutes identical. Because the request to amend 605 is identical to the liability under 18 USC 2511 the second Koch factor favors allowing the amendment. Finally the amendment does not seek to avoid prior rulings. Contrary to avoiding prior rulings amending 605 would actually coincide with this courts prior summary judgment order. As for bad faith the failure of the plaintiff to raise 605 in his amended complaint was an issue of misunderstanding the effect of one statue being amended simultaneously with another statute when it was enacted. In this motion the plaintiff has explained in great detail why he believed 605 was actually amended into title III. When looking at these factors the court should allow the amendment to proceed.

Respectfully,
Anthony Hoa